IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| OMOWALE ASHANTI SHABAZZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CASE NO. 3:13-00091 |
| vs. | ) | JUDGE SHARP/KNOWLES |
| | ) | |
| | ) | JURY DEMAND |
| | ) | |
| | ) | |
| DERRICK SCHOFIELD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

I. **Introduction and Background**

This matter is before the Court upon the pro se prisoner Plaintiff's "Motion for a Temporary Injunction." Docket No. 245. With the Motion, Plaintiff has submitted a supporting Memorandum of Law (Docket No. 246) and a supporting Declaration (Docket No. 247). Approximately two months after the instant Motion was filed, Plaintiff filed a "Motion to Amend and Supplement Motion for Injunctive Relief." Docket No. 281. With that Motion, Plaintiff submitted a Memorandum of Law and an "Amended and Supplemental Declaration in Support of Plaintiff's Motion for Injunctive Relief." Docket No. 284. The Court has recently granted the Motion to Amend and Supplement the Motion for Injunctive Relief. Docket No. 489.

Plaintiff, who is proceeding pro se and in forma pauperis, is an inmate in the custody of the Tennessee Department of Correction. He filed his "Verified Complaint" on February 4, 2013. Docket No. 1. Approximately one month later, he filed a Motion to Amend his Complaint

(Docket No. 11) and an Amended Motion to Amend (Docket No. 14). The Court granted those Motions (Docket Nos. 18, 19), and Plaintiff's "Amended Verified Complaint" was filed (Docket No. 15). Approximately nine months later, Plaintiff sought leave to amend his Amended Verified Complaint (Docket No. 155), which leave was granted (Docket No. 322), and Plaintiff filed his "Amended and Supplemental Verified Complaint" (Docket No. 323).

The thrust of Plaintiff's complaints is that Defendants have violated his constitutional rights by "totally abdicating their official duties and responsibilities . . . ." He avers that their acts or omissions include abandoning the specific duties of their position in failing to do their job. Other acts include interfering with or disregarding a doctor's orders and failing to provide adequate medical care. He also avers that he was deprived of equal protection of the law and subjected to excessive force. The instant Motion relates to failure to provide adequate medical care.

## II. The Motion for a Preliminary Injunction

A review of the record shows that Plaintiff's sought-after injunctive relief as set forth in his three Complaints differs from the relief he seeks in the instant Motion and the supplement to the instant Motion. The three different Complaints that Plaintiff has filed in this action contain virtually identical requests for injunctive relief. *See* Docket Nos. 1, p. 30; Docket No. 15, p. 31; Docket No. 323, p. 62. That relief, with certain minor variations, is as follows:

> D. Issue an injunction ordering defendant Schofield, Posey, Thrasher, Hodge, White, Lewis, CORIZON, Taylor, or their successors or agents to:
>
> 1. Immediately arrange for the plaintiff to start the treatment for Hepatitis C, and carry out such treatment without delay.

2

> 2. Create policies, procedures and protocols for the inmate
> population to review that would outline exactly what the criteria
> must be before the Hepatitis C treatment can be started.
>
> 3. Arrange for all inmates with medical restrictions to be
> immediately identified upon their transfer to another institution so
> that appropriate housing and bed space will be made available to
> accommodate their specific medical limitations.

*Id.,* p. 62.

The instant Motion seeks to enjoin "defendant Schofield, his agents, servants, employees and attorneys and those persons in active concert or participation with them from continually denying or delaying treatment of plaintiff's Hepatitis C." Docket No. 245, p.1. Plaintiff avers that, unless the injunction issues, Defendant Schofield and others "will continue to delay or deny treating plaintiff's Hepatitis C." *Id*., p. 1. Plaintiff avers that he will suffer immediate and irreparable injury, potential loss and damage, and that his condition will continue to worsen. He avers that he will be subjected to daily extreme and excruciating joint pain, fatigue, and stomach pain. He avers that the issuance of the injunction will not cause undue inconvenience or loss to defendant Schofield or others, but will prevent irreparable injury to himself. He also seeks to waive the requirement that he post security should the Court grant the relief sought. *Id*., p. 1-2.

In his Amended and Supplemental Motion for Injunctive Relief, Plaintiff seeks the following relief:

> [P]laintiff requests that defendant Schofield, his agents and
> employees be permanently enjoined to create, implement, maintain
> and enforce policies, protocols and procedures for the uniform and
> systematic diagnostic assessment and treatment of inmates with
> chronic Hepatitis C and a quality assurance plan related to the
> delivery of Hepatitis C treatment in all TDOC facilities. Plaintiff
> also requests that defendant Schofield, his agents and employees
> and those persons in active concert or participation with him be

3

> enjoined to immediately start the plaintiff on the Hepatitis C
> treatment consisting of pegylated interferon, victrelis, and ribaviron
> for one year.

Docket No. 281, p. 2-3.

### III. Injunction Standards

Fed. R. Civ. P. 65(d) provides as follows:

> (d) Contents and Scope of Every Injunction Restraining Order.
>
> (1) Contents. Every order granting an injunction and every restraining order must:
>
> (A) State the reasons why it issued;
> (B) State its terms specifically; and
> (C) Describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required.

Additionally, according to one noted authority, "The traditional standard for evaluating a request for a preliminary injunction . . ." was applied by the Sixth Circuit in *Mason County Medical Association v. Knebel,* 563 F.2 256, 261 (6th Cir. 1977). *Knebel* provides that a Court should consider whether:

> (1) the movant has shown a strong or substantial likelihood or probability of success on the merits;
>
> (2 the movant has shown irreparable injury;
>
> (3) the issuance of a preliminary injunction would cause substantial harm to others; and
>
> (4) the public interest would be served by issuing a preliminary injunction.

*See* **Moore's Federal Practice 3d** § 65.22[5][f], p. 65-69 to 70.

With regard to these four factors, "[a]lthough no one factor is controlling, a finding that

4

there is simply no likelihood of success on the merits is usually fatal." *Jolivette v. Husted,* 694 F.3d 760, 765 (6th Cir. 2012), *quoting Gonzales v. National Board of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

## IV.  Analysis

### A.  Plaintiff cannot show a substantial likelihood of success on the merits.

As noted above, there are significant differences between the relief Plaintiff has requested in his complaints versus the relief he has requested in the instant Motion and its Supplement. The Court will focus on the relief demanded in the instant Motion and its Supplement, rather than that found in the complaints. As one Court has noted, a party who seeks temporary relief "usually should make a motion for a preliminary injunction separate from the prayer for relief contained in the complaint." *James Luterbach Construction Co., Inc., v. Adamkus,* 781 F.2d 599, 603 n.1 (7th Cir. 1986). In *Adamkus*, the Court noted that Fed. R. Civ. P. 65(a)(2) "seems to require a separate motion for temporary relief when it refers to 'an application for a preliminary injunction.'" *Id*. *Adamkus* further cites C. Wright & A. Miller, *Federal Practice and Procedure* § 2949 (1973), for the proposition that "The appropriate procedure for requesting a preliminary injunction is by motion . . . ." *Id*.

As discussed above, the instant Motion seeks to enjoin Defendant Schofield and others "from continually denying or delaying treatment of plaintiff's Hepatitis C." Docket No. 245, p. 1. Plaintiff attempts to argue that Dr. Campbell at TCIX somehow directed or ordered that Plaintiff receive unspecified treatment for his Hepatitis C. Plaintiff states, "As set forth in Docket Entry Number One (1) at pages 87 thru 94, I was approved for the Hepatitis C treatment." Docket No. 284, p. 1. The referenced pages involve a grievance filed by Plaintiff in 2012. The

5

grievance essentially complained that Plaintiff's life at been placed in imminent danger because prison officials had failed to establish and execute any protocols that inmates with Hepatitis C be given biopsies to determine if they met certain treatment guidelines. Docket No. 1, p. 92. The supervisor's "Response" to the grievance stated:

> According to inmate Dean's medical record there was no indication that he had requested treatment for his illness. I met with him and Dr. Campbell today and *they agreed to start inmate Dean on the process for receiving treatment for his illness* in accordance with the CDC Centers for Disease Control and the NIH National Institute for Health. As a result of this meeting inmate Dean agreed to resolve this grievance.

Docket No. 1, p. 91 (emphasis added).

He avers that, before the treatment was begun, he was transferred to Northeast Correctional Complex. Docket No. 284, p. 1. When he arrived there, he told medical personnel that he was supposed to "receive the Hepatitis C treatment." *Id.*, p. 2. He states, "For some unknown reason, medical personnel have refused to give me any treatment whatsoever for my potentially fatal liver disease." Docket No. 247, p. 1. He refers to the "delay and/or denial of the prescribed Hepatitis C treatment." Docket No. 284, p. 2. There was, however, no "prescribed" Hepatitis C treatment that was actually ordered or directed by Dr. Campbell. Despite Plaintiff's attempts to argue that somehow Dr. Campbell directed or ordered that Plaintiff receive certain treatment, the record simply does not support such an argument.

At some points, Plaintiff appears to claim that he has received no treatment at all for Hepatitis C, while at other points he attempts to claim that he has not received certain treatment for that condition. For example, Plaintiff states:

> 160. On October 9, 2012, plaintiff was called to the medical clinic

6

> for chronic care.
>
> 161. The nurse practitioner who did chronic care was named Chafin.
>
> 162. When the plaintiff asked nurse practitioner Chafin questions concerning the numbness in his right hand and attempted to show her the bruises he had on his right and left thumb, she stated to the plaintiff that "*this is chronic care for your Hepatitis C*, and all that I'm going to do is renew your meds., and order an x-ray."

Docket No. 15, p. 20 (emphasis added).

In order to show a substantial likelihood of success on the merits, Plaintiff would have to establish a constitutional claim of inadequate medical care, which would require him to prove "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). As one Court has stated:

> The standard of deliberate indifference includes both objective and subjective components. . . . First, the deprivation of care must objectively be "sufficiently serious." . . . Second, the facts must give rise to a reasonable inference that the individual responsible for providing medical care knew of those serious medical needs and intentionally disregarded them. . . . Moreover, courts have held that inadequate medical care claims must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness . . . nevertheless, mere negligence or malpractice does not violate" the tenets of the Constitution.

*J.P. v. Taft*, 439 F. Supp. 2d 793, 808 (S.D. Ohio 2006) (citations omitted).

As discussed above, Plaintiff concedes that he has received some "chronic care" treatment for his Hepatitis C; it appears that the care he has received is simply is not what he wants. One Court has explained a similar situation as follows:

> [p]laintiff appears to disagree with the type and amount of medical treatment he received. Although the Constitution does require that

7

> prisoners be provided with a certain minimum level of medical
> treatment, it does not guarantee to a prisoner the treatment of his
> choice. The provision of medical care by prison officials is not
> discretionary, but the type and amount of medical care is
> discretionary. A disagreement as to the proper treatment to be
> received does not in and of itself state a constitutional
> violation . . . .

*Taft,* 439 F. Supp. 2d at 809.

Plaintiff relies upon *Erickson v. Pardus,* 551 U.S. 89 (2007), for the proposition that "interfering with a prisoner's Hepatitis C treatment" is "unconstitutional." Docket No. 245, p. 5. In *Pardus*, the prisoner plaintiff was being treated for Hepatitis C according to appropriate protocols established by the Correction Department. Prison officials concluded that plaintiff had taken a syringe made available to him for medical purposes and modified it in a manner suggestive of use for injection of illegal drugs. Therefore, officials removed plaintiff from the treatment program. In *Pardus,* plaintiff alleged that Defendants had terminated him from his existing Hepatitis C treatment, and that he was receiving no treatment at all. There is no allegation in the case at bar that Defendants terminated Plaintiff from his existing Hepatitis C treatment, and the record does not show that Plaintiff is receiving no treatment at all.[1]

**B. Based on the current record, neither the Court nor Plaintiff can describe in reasonable detail the act or acts Plaintiff seeks in the injunction.**

At some points, Plaintiff refers to "the Hepatitis C treatment," while at other points he specifically seeks an injunction with regard to a specific Hepatitis C treatment, namely, pegylated interferon, victrelis, and ribaviron. Docket No. 281, p. 2-3. As discussed above, however, Fed.

---

[1] The Court also notes that *Pardus* involved a Motion for Failure to State a Claim Upon Which Relief Could be Granted. The Court discussed the "liberal pleading standards" of Rule 8(a)(2). *Pardus* was decided prior to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which arguably significantly changed the requirements for pleading under Rule 8.

R. Civ. P. 65(d)(1) requires that injunctions must describe in reasonable detail the act or acts required. Based on the current record, the Court cannot determine which Hepatitis C treatment Plaintiff would be entitled to. Additionally, the Court has been unable to locate any evidence in the record to indicate that Plaintiff should be treated with pegylated interferon, victrelis, and ribaviron, or that such treatment is constitutionally required.

### C. Some of the relief sought by Plaintiff cannot be obtained.

In his Amended and Supplemental Motion, Plaintiff seeks to enjoin Defendant Schofield and others to create, implement, maintain and enforce policies, protocols and procedures for the uniform and systematic diagnostic assessment and treatment of inmates with Hepatitis C. He also seeks a "quality assurance plan" related to Hepatitis C treatment in all TDOC facilities.

There are several problems with this request. First, it seems apparent that Plaintiff seeks relief over and above that which he is entitled under the Constitution and federal laws. Plaintiff apparently wants a "perfect" system for treatment of all inmates with Hepatitis C. A constitutional system, however, need not necessarily be "uniform," nor "systematic." Plaintiff offers no authority for the proposition that he would be entitled to such relief, even if he were to ultimately prevail in this lawsuit.

Second, as one noted authority has stated, "A court must frame its injunctions or restraining orders so that those who must obey them will know precisely what the court intends to forbid or require." **Moore's Federal Practice 3d** § 65.60[4], p. 65-111 (footnote omitted). Based upon Plaintiff's amorphous request for "policies, protocols and procedures," the Court cannot frame an injunction to meet this requirement.

Third, Plaintiff's Amended and Supplemental Motion seeks injunctive relief on behalf of

9

persons other than Plaintiff. Plaintiff, a non-attorney prisoner who is proceeding pro se, cannot represent other prison inmates or seek relief on their behalf.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the instant Motion for a Temporary Injunction (Docket No. 245), as supplemented by the "Motion to Amend and Supplement Motion for Injunctive Relief" (Docket No. 281) be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. Clifton Knowles
United States Magistrate Judge