IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

OMOWALE A. SHABAZZ, )
)
       Plaintiff, )
)
) CASE NO. 3:13-0091
vs. ) JUDGE SHARP/KNOWLES
)
) JURY DEMAND
DERRICK SCHOFIELD, et al., )
)
       Defendants. )

## REPORT AND RECOMMENDATION

This matter is before the Court following Judge Sharp's remand for further consideration. Docket No. 539.

The undersigned previously submitted a Report and Recommendation (Docket No. 490) recommending that Plaintiff's Motion for a Temporary Injunction (Docket No. 245) be denied. Judge Sharp's Order stated in relevant part as follows:

> In [his] Complaint, Plaintiff alleges that, sometime around 2006, he "was diagnosed with Hepatitis C." (Docket No. 323, Cmp. ¶ 45). He claims he has never "received any treatment for Hepatitis C, although he has received sporadic monitoring and blood work," (Id. ¶ 53), and this alleged failure and treatment violates the terms of the settlement of a grievance that he had filed against the Tennessee Department of Corrections. After the settlement and before treatment began, Plaintiff was transferred to another institution.
> 
>      . . .
> 
> In the R&R, after quoting the supervisor's response to Plaintiff's grievance, Magistrate Judge Knowles concluded that "[t]here was . . . no 'prescribed' Hepatitis C treatment that was actually ordered or directed by Dr. Campbell," and that "[d]espite Plaintiff's

attempts to argue that somehow Dr. Campbell directed or ordered
that Plaintiff receive certain treatment, the record simply does not
support such an argument." (Docket No. 490 at 6).

Respectfully, that may be too narrow a reading of the record. The
quoted response of the supervisor to the grievance was a [*sic*]
follows:

> According to inmate Dean's medical record there
> was no indication that he had requested treatment
> for his illness. I met with him and Dr. Campbell
> today and they agreed to start inmate Dean on the
> process for receiving treatment for his illness in
> accordance with the CDC Centers for Disease
> Control and the NIH National Institute for Health.
> As a result of this meeting inmate Dean agreed to
> resolve this grievance. (Docket No. 1, Complaint at
> 91).

In the Court's opinion, this suggests that Dr. Campbell did, in fact,
determine that Plaintiff needed treatment for his Hepatitis C in
accordance with the protocols established by the CDC and NIH
unless one assumes (perhaps unwarrantedly) that Dr. Campbell just
feigned agreement to resolve the grievance.

Docket No. 539, p. 2-3.

Judge Sharp's Order further noted that the State had not filed a Response to the Motion

for a Temporary Injunction . Judge Sharp stated:

> The record as it now stands is simply insufficient to make
> considered determination as to whether Plaintiff is entitled to
> injunctive relief because it does not answer many questions,
> including, *most fundamentally, whether Plaintiff's health is at
> serious risk due to the lack of treatment which is medically
> necessary.*

*Id*., p. 4 (emphasis added).

Following the entry of Judge Sharp's Order, the undersigned ordered Defendants to

file a Response to the Motion, and allowed Plaintiff time to file a Reply. Docket No. 541.

A number of Defendants subsequently filed a Response (Docket No. 562) and the Affidavit of Dr. Kenneth Williams, Medical Director for the Tennessee Department of Correction ("TDOC") (Docket No. 563). Plaintiff thereafter filed a Reply to Defendants' Response (Docket No. 572), accompanied by his own Declaration (Docket No. 573) and the Declaration of Alexander Friedmann (Docket No. 574).

Dr. Williams' Affidavit states in relevant part that he is a medical doctor and holds a Ph.D. in Microbiology. He has experience in both inpatient and outpatient care, and was in private practice until he assumed his position with the Department of Correction. He held hospital privileges at Centennial, Baptist, and Summit Hospitals. He is a member of a national panel on Hepatitis C treatment, sponsored by Gilead Sciences, Inc. As a member of that panel, he attends regular meetings related to the direction of Hepatitis C treatment in a correctional setting, as well as in the community.

He states that he has reviewed Plaintiff's medical file "in order to advise this Court as to Mr. Shabazz's current health status and to respond to the allegations he makes concerning his alleged medical condition." Docket No. 563, p. 2. He states that Plaintiff is enrolled in a chronic care review program and his status is monitored regularly by a dedicated infectious disease monitor as well as the facility medical staff.

Plaintiff has been diagnosed with the Hepatitis C virus, Genotype 1. The primary indicator of whether treatment of Hepatitis C is warranted is the regular and consistent monitoring of liver enzyme levels, specifically the SGOT/AST and SGPT/ALT levels. Both of these tests indicate specific liver enzyme production and/or lack thereof.

All inmates in the custody of TDOC who have been diagnosed with Hepatitis C are monitored for increased liver enzyme levels on a regular basis. They are also assessed by physical exam to evaluate for any symptoms at regularly scheduled intervals.

Plaintiff's medical record shows that he has had lab work conducted at least 13 times since January 2013.[1] His liver enzyme levels were most recently tested on March 25, 2015. At that time his SGOT/AST level was at 25, with a reference range of 15-40 and SGPT/ALT = 23 with a reference range of 7-45. The reference range is the median of all persons providing a specimen to that particular laboratory, which includes people without Hepatitis C. The levels indicate that Mr. Shabazz's liver is functioning as it should, and in the same range as persons who do not have Hepatitis C. Additionally, his liver enzyme levels indicate that his liver is not in active cirrhosis.

Dr. Williams states that, in accordance with Plaintiff's liver enzyme levels and his "medical file as a whole," the Hepatitis C virus has yet to warrant the treatment which Mr. Shabazz seeks. In fact, his current levels do not warrant treatment at all, but do require continued monitoring. Because Plaintiff is a member of the Chronic Care Review Program, he will continue to be monitored on a continual basis, along with all other inmates who have been diagnosed with Hepatitis C.

Plaintiff's Hepatitis C is stable and he is not in any way in an acute phase. The Department's general policy is to monitor enzyme levels at least every 3 months for all inmates diagnosed with Hepatitis C. This policy is consistent with generally accepted medical practices, regardless of whether the patient is incarcerated or is a free world patient.

---

[1] Dr. Williams' Affidavit was executed and filed May 6, 2015.

Plaintiff's Hepatitis C is in a stable condition and is not progressing. In some cases, the Hepatitis C disease never progresses to a point which requires treatment and, while diagnosed with Hepatitis C, one's liver may always function normally.

In a December 2014 examination, Mr. Shabazz had a stable liver enzyme level, he showed no indication of pain and did not communicate any pain to the examining physician. There was no indication of any jaundice in Plaintiff's eye exams. Jaundice is a yellowing of the white of a patient's eyes, which is direct physical evidence of less than optimum liver functions. If Plaintiff had presented with yellowing of the eyes, further tests would be conducted to reevaluate the status of his Hepatitis C.

Finally, Dr. Williams states:

> Mr. Shabazz's health or safety is not presently at risk, due to his Hepatitis C. The type of Hepatitis which Mr. Shabazz has, Genotype I, is not such that it will cause immediate and unforeseen health risks. With regular testing of a patient's enzyme levels, increased levels can be monitored to determine if treatment is necessary, as other unrelated factors can cause increased liver enzymes, independent of a Hepatitis C diagnosis.
>
> Should Mr. Shabazz's enzyme levels change to such a degree that treatment is warranted, he will be provided with appropriate treatment.

Docket No. 563, p. 4.

Defendants' Response argues that Plaintiff is not entitled to injunctive relief because he has not made the requisite showing of: (1) a strong or substantial likelihood or probability of success on the merits; (2) irreparable injury to Plaintiff; (3) lack of substantial harm to others by the issuance of an injunction; and (4) the public interest being served by issuing an injunction. *See Newsom v. Norris,* 888 F.2d 371, 373 (6th Cir. 1989). Defendants' Response also states in

part that they "are unable to find any place in Mr. Shabazz's medical record where a medical doctor ordered prison medical staff to start Mr. Shabazz on a Hepatitis C regimen."[2] *Id*., p. 2 (footnote omitted). Defendants point out that a physician, Dr. Campbell, participated in an agreement to start Plaintiff on the "process for receiving treatment for his illness . . . ." Defendants argue that the "process" for receiving treatment includes blood tests and monitoring of enzyme levels, a process in which Plaintiff is and has been participating.

Plaintiff's Reply argues that neither Defendants' Response nor the Affidavit of Dr. Williams addresses his claims of "daily extreme and excruciating joint pain, fatigue, and stomach pain, or even if these physical elements are consistent with a person diagnosed with Hepatitis; nor whether the hepatitis C antiviral therapy treatment will eradicate or alleviate these symptoms." Docket No. 572, p. 2. He argues that Dr. Williams has no personal knowledge of the accuracy of his medical file. He refers to Dr. Williams's Affidavit as "self-serving." He argues that the unauthenticated medical documents have been selectively chosen by Defendants, without any type of confirming or collaborative evidence. He also notes that the Defendants have sole custody and control over his medical file, and "are in a position to manipulate the facts contained in [his] medical file to suit their own position and purpose." *Id*., p. 3. He objects to Defendants' reliance upon his medical records, which "they have persistently denied him access to . . . while taking full advantage of their renegade behavior while in sole possession and

---

[2] As discussed above, the undersigned's previous Report and Recommendation determined that there was no prescribed Hepatitis C treatment that was actually ordered or directed by Dr. Campbell. Docket No. 539, p. 2. Judge Sharp, however, determined that that conclusion "may be too narrow a reading of the record."

control" of his medical file.[3]

He reiterates his argument that he was recommended and approved for "the hepatitis C treatment," which Defendants refuse to provide. He argues that he has received absolutely no medical treatment for his hepatitis C, nor were any outside consultations provided, nor has he been given a biopsy.

He again refers to a grievance in which Dr. Campbell allegedly agreed to start him on the process for receiving treatment for his Hepatitis C in accordance with the Centers for Disease Control and the National Institute of Health Guidelines. He claims that TDOC policy was violated because staff failed to comply with the "directive" contained in the grievance resolution. He argues that, while Dr. Campbell was not employed by the State of Tennessee, he was employed with Corizon who was providing a service pursuant to a contract between Corizon and TDOC.

He claims there is "direct evidence" in the record that Dr. Campbell did prescribe the hepatitis C antiviral therapy "to him." He says that he requested his "Genotype and viral load" on August 18, 2012, and was told that the Genotype and viral load were not being done until the person was being considered for treatment. He claims that after the grievance was resolved, he had blood drawn to determine what his Genotype, grade, and viral load were. He states that it can be inferred that Dr. Campbell did in fact intend for him to receive the Hepatitis C treatment.

Plaintiff also questions the qualifications of Dr. Williams with regard to his expertise on the functioning of the human liver. Plaintiff relies upon a book by an alleged "renowned

---

[3] He also states, however, that he "personally reviewed his medical file in 2013 and 2014." Docket No. 572, p. 8.

hepatologist," Dr. Melissa Palmer, for the proposition that the only way to confirm the suspicion of cirrhosis is through a liver biopsy. He says he has never had such a liver biopsy.

Finally he states that he came into possession of a copy of the TDOC Hepatitis C Protocols through Alex Friedmann, whose Declaration Plaintiff has also filed. He says that he meets the requirements as established by the TDOC to receive the hepatitis treatment, but he is still being denied that treatment. He concludes:

> Mr. Shabazz readily admits that he has no formal medical training, yet he can read and has fairly good comprehension skills. So based upon the medical literature written by experts in the field of hepatology and gastroenterology, Mr. Shabazz believes that he is at risk to suffer immediate and irreparable injury by being allowed to suffer daily extreme and excruciating joint pain, dilapidating fatigue, and stomach pain, when a remedy is readily available, yet denied, which would alleviate these physical symptoms.

Docket No. 572, p. 11-12.

The Declaration of Alexander Friedmann states in relevant part that he is the managing editor of *Prison Legal News,* a monthly publication that reports on corrections and criminal justice-related news in litigation. He states that in that capacity, he submitted a public records request to TDOC requesting in part: "Policies, rules, regulations and similar documents related to the hepatitis C treatment for inmates in TDOC custody." He states that pursuant to that request, on November 15, 2013, a TDOC staff attorney sent him via e-mail a copy of TDOC's hepatitis C treatment protocol, titled "HCV Pre-Treatment Program."[4] He attaches that e-mail to his

---

[4] The 8-page document supplied by Mr. Friedmann does not contain any indication that it is titled "HCV Pre-Treatment Program." Docket No. 574, p. 4-11.

Declaration, and states that he has provided a copy of that protocol to Plaintiff.[5]

As discussed above, in order to obtain injunctive relief, Plaintiff must show a substantial likelihood of success on the merits. In order to show a substantial likelihood of success on the merits, Plaintiff must establish a constitutional claim of inadequate medical care, which would require him to prove "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

Plaintiff's main contentions appear to be that Dr. Campbell prescribed some Hepatitis C treatment for Plaintiff as a result of the grievance process and that the Court should disregard much or all of Dr. Williams's Affidavit for various reasons. Even if such treatment had been ordered by Dr. Campbell, however, Dr. Williams has stated that Plaintiff's medical records do not indicate that such treatment would be warranted at this time, based on Plaintiff's enzyme levels and other clinical evaluations. Thus, there is at most a difference of opinion between two doctors as to how Plaintiff should be treated. Such a situation does not rise to the level of deliberate indifference. As one Court has stated:

> The standard of deliberate indifference includes both objective and subjective components . . . . First, the deprivation of care must objectively be "sufficiently serious." . . . Second, the facts must give rise to a reasonable inference that the individual responsible for providing medical care knew of those serious medical needs and intentionally disregarded them . . . . Moreover, courts have held that inadequate medical care claims must be "so grossly incompetent, inadequate, or excessive as to shock the conscious or to be intolerable to fundamental fairness . . . nevertheless, mere negligence or malpractice does not violate" the tenets of the

---

[5] While Plaintiff argues that he meets the requirements as established by TDOC to receive Hepatitis treatment, he simply refers to the 8-page document supplied by Mr. Friedmann. Docket No. 572, p. 11, *citing* Docket No. 574, p. 4-11. He does not explain exactly how he meets any "requirements" of that document.

9

Constitution.

*J. P. v. Taft*, 439 F. Supp. 2d, 793, 808 (S.D. Ohio 2006) (citations omitted).

Defendants have provided the Affidavit of a medical doctor which states that the care being provided to Plaintiff is appropriate under the circumstances, and that Plaintiff simply does not need the treatment that he desires. The burden of showing that he is entitled to injunctive relief rests upon Plaintiff, not Defendants. Despite Plaintiff's arguments, he has submitted no medical proof that he should be receiving the therapy he seeks.[6]

While Plaintiff makes a number of arguments as discussed above, the fundamental question as stated by Judge Sharp is "whether Plaintiff's health is at serious risk due to the lack of treatment which is medically necessary." The Affidavit of Dr. Williams shows that it is not.

The Affidavit of Dr. Williams shows that: (1) Plaintiff has had lab work conducted at least 13 times from January 2013 to May 2015; (2) his liver enzyme levels indicate that his liver is functioning as it should and in the same range as persons that do not have Hepatitis C; (3) the Hepatitis C virus has yet to warrant the treatment that Plaintiff seeks, or any treatment at all, except continued monitoring; (4) Plaintiff's Hepatitis C is stable and he is not in any way in an acute phase; (5) Plaintiff's Hepatitis C is in a stable condition and is not progressing, and it may never do so; and (6) Plaintiff's health or safety is not presently at risk due to his Hepatitis C. Moreover, if Plaintiff's enzyme levels change to such a degree that treatment is warranted, he will be provided with appropriate treatment.

Based on the foregoing, Plaintiff cannot establish deliberate indifference to his serious

---

[6] With all due respect, the Court will decline to consider Plaintiff's arguments based upon his understanding of medical texts.

medical needs, and, therefore, he cannot establish a substantial likelihood of success on the merits.

For the foregoing reasons, Plaintiff's Motion for a Temporary Injunction (Docket No. 245) should be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. Clifton Knowles
United States Magistrate Judge