# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **OMOWALE A. SHABAZZ**, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:13-cv-00091** |
| | ) | **Judge Crenshaw/Knowles** |
| **DERRICK SCHOFIELD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon a "Motion to Dismiss or for Summary Judgment" filed by Defendants Ruby Anderson, Harold Angel, Wanda Chafin, Connie Church, Sue Clark, Angela Combs, Georgia Crowell, Chris Davis, Rita Edwards, Sherry Freeman, Jerry Gentry, Rebecca Gouge, Misty Gregg, Julie Holtkamp, Tony Howerton, David Jenkins, Jerry Lester, James Lundy, Laura Pierceall, Paige Reburn, Derrick Schofield, David Sexton, Charles Short, Jim Thrasher, Clifford Tressler, Dan Walker, and Todd Wiggins (hereinafter the "State Defendants"). Docket No. 616. The State Defendants have filed a supporting Memorandum of Law (Docket No. 617) and several exhibits (Docket Nos. 618-628).

Plaintiff has filed a Response in Opposition to the Motion. Docket No. 649.

Plaintiff, a pro se prisoner, filed his original in forma pauperis Complaint against thirty-six Defendants. Docket No. 1. Seven Defendants were dismissed upon a frivolity review. Docket No. 7. Plaintiff was permitted to amend his Complaint on two occasions. Docket Nos. 15, 323. His latest Complaint, filed with leave of Court, is headed "Amended and Supplemental Verified Complaint." Docket No. 323. In that 218 page Complaint, Plaintiff has sued approximately thirty-nine Defendants in three different prisons, as well as administrators of the

Tennessee Department of Correction, and two corporate contract healthcare providers.

Defendants have raised approximately twenty-two grounds for their Motion, most of which relate to individual Defendants or groups of Defendants. Docket No. 617. Plaintiff has filed a Response that is not organized in the same manner as Defendants' Motion. Docket No. 649. Plaintiff's Response is essentially based upon what he refers to as "his two categories of claims against the State Defendants: (1) his claims based on State Defendants' failure to treat his hepatitis C; and (2) his other claims, which primarily relate to State Defendants' excessive use of force against him and then retaliating against Plaintiff for filing this lawsuit." Docket No. 649, p. 1-2. The Court will discuss the arguments that are set forth in the State Defendants' Motion in the order that they appear therein.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To prevail, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *See Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 202 (1986); *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the non-moving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise,

must set forth specific facts showing that there is a genuine issue for trial. If a non-moving party, however, fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id*. at 322-23; *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999).

As the Sixth Circuit has stated, "The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (footnote omitted).

Broad, unsupported allegations of non-specific action or inaction fail to state a claim for relief under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Second, allegations that a Defendant mishandled a grievance or failed to investigate a complaint also fail to state a claim. *Id.* A complaint or grievance to a supervisory official is an insufficient basis with which to establish personal liability for a constitutional violation. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "A combination of a knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983." *Henry v. Pogats*, 1994 WL 462129 at *2; *accord Poe v. Haydon*, 853 F.2d 419, 429 (6th Cir. 1988).

The State Defendants make a two paragraph argument that any claims for incidents that occurred prior to January 29, 2012, are barred by the one-year statue of limitations set forth in

T.C.A. § 28-3-104(a)(3). State Defendants note that Plaintiff verified his initial Complaint on January 29, 2013. The Complaint was filed on February 4, 2013. Docket No. 1.

While it is true that T.C.A. § 28-3-104(a)(3) provides a one-year statute of limitations for civil rights actions, the statute of limitations is an affirmative defense which must be pled by Defendants. In many instances, statutes of limitations can be tolled.

Defendants do not specify which incidents they believe are barred by the statute of limitations. Rather, Defendants simply argue that all of Plaintiff's claims arising prior to a certain date are barred. The Court cannot agree that the State Defendants are entitled to a blanket dismissal of Plaintiff's claims occurring prior to a specific date.

State Defendants have not shown that they are entitled to a judgment as a matter of law on this point, and the instant Motion should be denied with regard to the general statute of limitations issue.

State Defendants note that Plaintiff appears to assert various claims on behalf of other inmates with Hepatitis C or the prison population in general. Specifically, State Defendants point to Plaintiff's claim that there are only ten beds at the DeBerry Special Needs Facility ("DSNF") for the entire prison population who are infected with Hepatitis C. State Defendants argue that Plaintiff does not have standing to make such a claim, because he has no medical proof that he sustained an injury as a result of the number of beds at DSNF.

In his Response, Plaintiff concedes that he "is not bringing claims on behalf of other prisoners." Docket No. 649, p. 4. Plaintiff continues:

> However, he should be permitted at trial to offer proof concerning the resource limitations the State has imposed (*e.g.* limited number of beds for hepatitis C treatment). The proof of resource limitations supports Plaintiff's claim that the State has deprived

4

him of needed treatment for cost reasons.

*Id.*

Plaintiff's statements concerning proof at trial are not a matter for summary judgment.

Moreover, Plaintiff has not responded to the argument that he cannot prove he sustained an injury as a result of the number of beds at DSNF.

In view of the foregoing concession, State Defendants' argument that Plaintiff does not have standing to sue on behalf of other prisoners is MOOT.

State Defendants argue that Plaintiff seeks injunctive or declaratory relief with regard to matters that arose while he was incarcerated at Northeast Correctional Complex ("NECX") and at the Turney Center Industrial Prison ("TCIP"). State Defendants argue that Plaintiff has not been housed at NECX since July 23, 2014, nor has he been housed at TCIP since September 10, 2012.

In response to this argument, Plaintiff states as follows:

> Although Plaintiff acknowledges the general proposition that a prisoner's being transferred can moot that prisoner's official-capacity claims against officials at his former facility, Plaintiff respectfully contends that his claims for injunctive and declaratory relief against Defendants at NECX and Turney were not mooted *ab initio* by his transfer and may still present live, justiciable issues. And even if Plaintiff's claims against officials at these two facilities were mooted to the extent that they are retrospective, Plaintiff is not barred from seeking prospective injunctive relief against these same Defendants in their official capacities. Although Plaintiff may not currently be housed at NECX or Turney, he could very well be transferred back to either facility such that prospective injunctive relief could remain available.
>
> Additionally, because the decision to transfer a prisoner rests with prison officials, ruling that Plaintiff's transfer moots his official-capacity claims against the NECX and Turney Defendants could create an issue that is "capable of repetition, yet evading review"

5

because prison officials – the very people against whom Plaintiff asserts his claims – could continue to subject Plaintiff to constitutionally impermissible conditions of confinement but perpetually moot any claims against them by transferring Plaintiff before the resolution of any lawsuits targeting these conditions. Thus, even if all of Plaintiff's claims for injunctive and declaratory relief against Defendants at Turney and NECX would otherwise be moot, they fall into this mootness exception.

Once again, the State Defendants have not specified exactly what injunctive relief Plaintiff is seeking with regard to NECX or TCIP. For this reason, the Court cannot make a determination as to whether such claims would be moot.

Thus, State Defendants are not entitled to summary judgment with regard to this argument.

While Plaintiff raises many claims in this action, his primary claim is that he is being denied either appropriate treatment or any treatment at all for his Hepatitis C.

The State Defendants essentially argue as follows. Plaintiff is actually receiving the proper care, which has basically consisted of monitoring Plaintiff's condition, rather than actually "treating" it. The Hepatitis C protocol that TDOC follows meets the Centers for Disease Control standards, the Federal Bureau of Prisons standards, and Community Standards. During the time relevant to this lawsuit, Plaintiff was not eligible for Hepatitis C treatment, because he was not a "candidate" for Hepatitis C treatment. Because of this fact, he was not "entitled" to a drug therapy regimen. The Affidavit of Dr. Kenneth L. Wiley, who is Associate Medical Director for the TDOC, states in relevant part:

> 8. No medical staff, contract or otherwise, should have been providing [Plaintiff] with Hepatitis C drugs, because dispensing such medications would have been not only an ethical violation, but a potential violation of law.

6

> 9.  Dispensing Hepatitis C drugs to [Plaintiff] when such drugs are not presently medically necessary, could cause serious bodily harm, up to and including death.

> 10. [Plaintiff] has been participating in the Hepatitis C treatment process for several years.  He is a member of the chronic care review program and he will continue to be monitored on a continual basis along with all other inmates who have been diagnosed with Hepatitis C.

Docket No. 622, p. 2.

Plaintiff responds that he can prove the State has failed to provide him with medically necessary treatment because such treatment is expensive.  Docket No. 649, p. 2.  Plaintiff argues that there are, at a minimum, disputed issues of fact as to whether Plaintiff should be receiving treatment for his Hepatitis C.  He states:

> Defendants contend that it is sufficient to monitor Plaintiff's condition, without prescribing him any drugs to treat his condition.  However, Plaintiff can show, through testimony of Drs. William and Wylie (among others), at trial, that (a) the American Association for the Study of Liver Diseases (AASLD) Guidelines set forth a required treatment; (b) that Defendants failed to prescribe such treatment; and (c) they failed to do so because such treatment was not provided for in the State's budget.

> The 2014 AASLD Guidelines provide, as their sixth recommendation, that "Antiviral treatment is recommended for all patients with chronic HCV infection, except those with limited life expectancy . . ."  It is undisputed that Plaintiff is not receiving such treatment, as Defendants concede that they have prescribed no antiviral treatment for him.

Docket No. 649, p. 3 (footnote omitted).

Plaintiff has submitted a "Surgical Pathology Report" dated July 29, 2015, from Nashville General Hospital showing his "final diagnosis" as:

> A.  Liver biopsy: Chronic Hepatitis with moderate portal inflammation and lobular activity (grade 3), consistent with

chronic Hepatitis C viral infection . . . .

Docket No. 615-1.

Furthermore, the Court takes judicial notice of *Graham, et al. v. Parker, et al.*, Case No. 3:16-1954, filed July 25, 2016, United States District Court for the Middle District of Tennessee. *Graham* is a proposed class action which avers that inmates in the custody of the Tennessee Department of Correction who are infected with the Hepatitis C virus are being denied treatment in violation of the Eighth Amendment.[1]

Thus, there are genuine issues as to material fact concerning whether Plaintiff should receive actual treatment and not merely monitoring, and if so, what form such treatment should take. The State Defendants are not entitled to a judgment as a matter of law on these claims.

The State Defendants make a general argument that Plaintiff's claims against Wanda Chafin, Sue Clark, Angela Combs, Georgia Crowell, Sherry Freeman and Julie Holtkamp are based on the assertion that these members of the medical support staff failed to provide Plaintiff with drugs or other treatment related to his Hepatitis diagnosis. Docket No. 617, p. 6.

The State Defendants argue that Plaintiff fails to state a claim as to Defendant "Sue Chafin."[2] The State Defendants argue that Plaintiff's allegations against Defendant Chafin include "rudeness," and her alleged statement to Plaintiff that some of his heartburn medications would be stopped because of cost concerns. But she had no authority to prescribe medications or

---

[1]The Complaint in *Graham* avers in part that the AASLD and the Infectious Disease Society of America ("IDSA") formed the HCV Guidance Panel in mid-2013. The HCV Guidance Panel recommends that "all HCV positive individuals" be treated. Case No. 3:16-1954, Docket No. 1.

[2]The only Defendant with the surname Chafin in this action is Wanda Chafin. The Court will presume the Motion applies to Defendant Wanda Chafin, not "Sue Chafin."

to make cost cutting decisions, and these claims simply do not rise to the level of an actionable claim under 42 U.S.C. § 1983.  Docket No. 617, p. 9.

Plaintiff's claims against Defendant Wanda Chafin appear to be set forth on pages 34-35 of Plaintiff's "Amended and Supplemental Verified Complaint."  Docket No. 323.  These allegations, essentially, are that Defendant Chafin performed "chronic care" on October 9, 2012; that Plaintiff asked her questions about numbness in his right hand and showed her bruises on his right and left arms, but that Defendant Chafin stated to Plaintiff "this is chronic care for your Hepatitis C, and all that I am going to do is renew your meds and order an x-ray."  Docket No. 323, p. 34.  Plaintiff further avers that Defendant Chafin "would not even discuss the recommendations made by Dr. Campbell and affirmed by the TDOC Director of Clinical Services."  *Id.*  Plaintiff also asked Defendant Chafin for pain medication, but she denied giving him anything for pain, because it "had nothing to do with chronic care . . . ."  *Id.*, p. 34-35.

In his Response, Plaintiff does not specifically address these arguments.

The Court agrees that these allegations do not state a claim for deliberate indifference as to a serious medical condition.  Therefore, Plaintiff's claims against Defendant Wanda Chafin should be dismissed.

The State Defendants next argue that Plaintiff fails to state a claim for relief as to Defendant Sue Clark.  Docket No. 617, p. 9.  The State Defendants contend that Plaintiff makes only a single specific allegation against Defendant Sue Clark, which reads: "Sue Clark, the Director of Nursing at this institution responded: 'your meds will be issued to you as soon as they come in, or are found . . . .'"  *Id.*, *citing* Docket No. 323, p. 39.  In his Response, Plaintiff does not specifically address these arguments.

Once again, the Court agrees that these allegations fail to state a claim against Defendant Sue Clark.

The State Defendants argue that Plaintiff has failed to state a claim for relief as to Defendant Angela Combs. The State Defendants aver that the only specific allegation against Defendant Combs is:

> On October 1, 2012, the plaintiff went to sick call complaining about his right shoulder, elbow, and hand. Plaintiff spoke with Nurse Combs. Nurse Combs stated that she would not treat the plaintiff because he was scheduled to be seen on chronic care sometime during the month.

Docket No. 617, p. 10.

In his Verified Complaint, however, Plaintiff avers that after the foregoing exchange, he "was given absolutely no medical attention whatsoever," and that he complained of being in pain with numbness in his right hand, which he still suffered from. Docket No. 323, p. 33-34. The Verified Complaint also states that, on September 28, 2012, Plaintiff wrote a grievance about being maliciously and sadistically assaulted. Docket No. 323, p. 33. Nurse Combs has submitted an Affidavit stating that, when Plaintiff was seen on sick call on October 1, 2012, he was offered an ibuprofen, but he refused it. Docket No. 620. He was also offered a warm compress, but refused that as well. *Id.*

Construing the facts in the light most favorable to Plaintiff, he had been maliciously and sadistically assaulted several days earlier. He went to sick call on October 1, 2012, but he was "given absolutely no medical attention whatsoever."

In short, there is a genuine issue as to material fact concerning whether Plaintiff received any medical treatment on October 1, 2012. Therefore, Defendant Combs's Motion for Summary

Judgment should be denied.

The State Defendants next argue that Plaintiff has failed to state a claim for relief as to Defendant Georgia Crowell. Docket No. 617, p. 10. The State Defendants argue that Plaintiff makes two allegations against Defendant Crowell, neither of which involves "wrongdoing." Plaintiff avers that Nurse Crowell authored a response to a grievance, in which she stated, "TDOC is presently evaluating treatment of inmates who are hep C positive. Data is being collected to see which inmates meet the criteria for treatment. If you meet the criteria, you will be notified." *Id.*, p. 11. Defendants properly argue that a response to a grievance does not state a claim for relief under 42 U.S.C. § 1983. *See Bellamy v. Bradley*, 429 F.2d 416, 421 (6th Cir. 1984).

The second allegation against Defendant Crowell is:

> On June 5, 2013, the Health Administrator Georgia Crowell, called the plaintiff to the clinic and told him that he is not getting his meds as prescribed because he is using his legally changed name and not his committed name.

Docket No. 617, p. 11. Again, the Court agrees that this is not an allegation of wrongdoing, but is merely a recitation of a conversation Plaintiff and Nurse Crowell had.

In his Response, Plaintiff does not specifically address these arguments. Thus, the Motion for Summary Judgment as to Defendant Georgia Crowell should be granted.

The State Defendants next argue that Plaintiff fails to state a claim for relief as to Defendant Sherry Freeman. Defendants argue that Plaintiff alleges he sent an information request to Defendant Freeman, informing her that he had been recommended for Hepatitis C treatment, but that she "failed to take any action whatsoever to address [his] serious medical needs." Docket No. 617, p. 11. Additionally, Plaintiff avers that Defendant Freeman responded

11

to an information request through Julie Holtkamp that Plaintiff's health needs had been met.

Defendant Freeman is identified in the Amended Complaint as being the "Health Administrator at NECX." Docket No. 323, p. 9.

The State Defendants argue that Plaintiff does not provide any documentation to support his contention that he was recommended for treatment, and that Defendants are not aware of a "recommended treatment plan." Additionally, the State Defendants argue that they have demonstrated that Plaintiff was not, in fact, a candidate for Hepatitis C treatment during that period of time. Docket 617, p. 11.

In his Response, Plaintiff does not specifically address these arguments.

The Court agrees with the State Defendants that these allegations fail to state a claim upon which relief can be granted with regard to Defendant Freeman. A "combination of knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983." *Henry v. Pogats* 1994 WL 462129 at *2 (6th Cir.); *accord Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).

Therefore, Plaintiff's claims against Defendant Sherry Freeman should be dismissed.

Plaintiff next argues that Defendant Julie Holtkamp knew or should have known that Plaintiff had been diagnosed with Hepatitis C, but that she "completely abdicated and/or abandoned her professional responsibility to the plaintiff by failing to ensure that the plaintiff received the recommended treatment . . . ." Docket No. 617, p. 12. There is, however, no indication that Defendant Holtkamp had the authority to authorize treatment on her own.

In his Response, Plaintiff does not specifically address these arguments.

Plaintiff, therefore, has failed to state a claim for relief as to Defendant Julie Holtkamp.

The State Defendants argue that Plaintiff makes no specific claims against Defendants Schofield, Lester, Sexton, or Thrasher in the body of his Complaint. The State Defendants argue that any broad allegations are brought against these Defendants in their capacity as supervisory employees, and the law is clear that a Defendant must be personally involved in the alleged unconstitutional activity, and cannot be liable on the basis of respondeat superior. As the Sixth Circuit has stated, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

In his Response to the State Defendants' Motion for Summary Judgment, Plaintiff has not addressed the authorities discussed above. Plaintiff's failure to contravene these authorities indicates to the Court that he has no response.

Therefore, the Motion for Summary Judgment as to Defendants Derrick Schofield, Jerry Lester, David Sexton, and Jim Thrasher should be granted.

The State Defendants next aver that Plaintiff has made no specific claims against Defendant Dan Walker, the former Health Administrator at the Morgan County Correctional Complex, or against Rita Edwards, an officer at Turney Center.

As the State Defendants correctly argue, Plaintiff must allege and prove that a defendant was personally involved in some manner in the alleged unconstitutional activity set out in the Complaint. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1983).

In his Response, Plaintiff does not address the arguments with regard to Defendants Walker or Edwards.

Therefore, Plaintiff has failed to state a claim against Defendants Dan Walker and Rita Edwards, and his claims against them should be dismissed.

The State Defendants next argue that Plaintiff has failed to state a claim for relief against Defendant Laura Pierceall. The State Defendants argue that Plaintiff's sole claim against Ms. Pierceall, a counselor at Turney Center, is that she would not give him plastic bags in which to pack his belongings. Plaintiff, in his Response, does not dispute this fact. Defendant Pierceall's failure to provide Plaintiff with plastic bags plainly does not rise to the level of a constitutional violation.

Therefore, Plaintiff's claims against Defendant Laura Pierceall should be dismissed.

The State Defendants next argue that Plaintiff has failed to state a claim for relief against Defendant David Jenkins, an inmate relations coordinator at Turney Center. The State Defendants argue that Plaintiff's only allegation is that Defendant Jenkins would not find him a bottom bunk, in accordance with his medical limitations. Plaintiff filed a grievance regarding this issue, and when the grievance was heard, it was discovered that Plaintiff's medical restrictions had not been entered in the Tennessee Offender Management Information System (TOMIS) and as a result, the management team was not aware of Plaintiff's medical limitations. On the day it was learned through the grievance process that Plaintiff did have some medical limitations, he was moved to another prison. The grievance was classified as resolved.

The Court agrees that the claim against Defendant Jenkins is, at best, a claim of negligence, which is not sufficient to warrant relief under 42 U.S.C. § 1983.

State Defendants next argue that Plaintiff has failed to state a claim for relief as to Defendant Harold Angel, who was a unit manager at NECX. Plaintiff avers that, on September

25, 2012, he spoke with Defendant Angel asking if he or another inmate could be moved to another cell because Plaintiff was "very anxious" about living with this particular inmate. Defendant Angel allegedly told Plaintiff that he would move someone after the noon count, but he never did. The required process for requesting a cell change is for the inmate to submit a Cell Change Request Form CR-2532. Docket No. 623, p. 1. Defendant Angel can find no record that Plaintiff submitted such a change form. *Id.*

Plaintiff also avers that Defendant Angel "created a hostile and dangerous living environment by placing inmates of different custody and classification levels all in the same housing unit." Docket No. 617, p. 18. Defendant Angel's Affidavit provides that the unit where Plaintiff was housed, Unit 7, was designed to house inmates with custody level of close medium minimum restricted, minimum direct, and minimum trusty. Docket No. 623, p. 2. Plaintiff's custody level was medium while he was assigned to Unit 7, and his housing assignment was appropriate. Mr. Angel further states that he "did not create the restrictions on inmate movement within Unit 7." *Id.*

Once again, Plaintiff has not specifically addressed these arguments.

Thus, Plaintiff has failed to state a claim for relief as to Defendant Angel.

The State Defendants next argue that Plaintiff has failed to state a claim for relief against Defendant Todd Wiggins. The State Defendants aver that the allegations against Defendant Wiggins are essentially the same as those against Defendant Angel. Plaintiff avers that he asked Deputy Warden Wiggins why he was kept in a gang unit, and Defendant Wiggins stated that it was no longer a gang unit. Docket No. 617, p. 19.

Plaintiff does not, however, allege any injury as a result of Defendant Wiggins's remarks.

Additionally, as a general proposition, an inmate possesses no inherent constitutional right to placement in any particular prison or in any particular section within the prison system. *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995) (citations omitted).

Plaintiff has failed to respond to these arguments.

Therefore, Plaintiff has failed to state a claim for relief as to Defendant Todd Wiggins.

The State Defendants next aver that Defendant Tony Howerton, the former warden at the Morgan County Correctional Complex, lacks sufficient personal involvement to be held liable in this case. The State Defendants aver:

> The Plaintiff makes one, single allegation against former warden Tony Howerton in his Amended Complaint. It reads as follows, "the warden disagreed with that response and stated that: 'evaluation for liver enzyme elevation treatment is determined by CORIZON not TDOC. Redress issue with medical contractor CORIZON,' and is signed by the institutional warden, Tony Howerton, or his designee on June 4, 2012."

Docket No. 617, p. 21.

Plaintiff has not specifically responded to the argument concerning Defendant Howerton. The fact that Defendant Howerton signed a form or "response" does not rise to the level of a constitutional violation. Therefore, these allegations fail to state a claim against Defendant Howerton.

Plaintiff avers in his Amended Complaint that he was subjected to excessive force on September 26, 2012, by officers at the Northeast Correctional Complex. He essentially avers that he was assaulted by Defendant James Lundy and other members of the CERT Team. Plaintiff avers that Defendants Gregg and Short "stood idle and watched this malicious and sadistic assault occur," but they chose not to intervene. Docket No. 323, p. 29. Plaintiff avers

that Defendant Lundy threw him to the floor of his cell, jumped onto his back, and began striking him in the back and head area. He further avers that "other CERT Team members ran into the cell and jumped on Plaintiff's back."

After the assault, Plaintiff was taken to the segregation unit and was told to undress for a strip search, which he initially refused to do. Docket No. 323, p. 31. Captain Bailey was called and showed up with a taser gun. Captain Bailey instructed Plaintiff to undress or "he was going to light the plaintiff up." Docket No. 323, p. 32. Plaintiff avers, "At this point, the plaintiff had to rethink his position and undressed." *Id.* Captain Bailey then told Plaintiff he had to walk upstairs to a cell. Plaintiff attempted to explain to Captain Bailey that he was under a doctor's orders not to walk up any stairs. Once again, Captain Bailey told Plaintiff that if he did not walk up the stairs, Plaintiff would be tased.[3]

With regard to the instant claim of excessive force, the State Defendants aver that Plaintiff's allegations "are not based in fact," and they rely upon the Affidavits of James Lundy, Clifford Tressler, and Charles Short. Docket Nos. 624, 621, 619. Defendant Tressler's Affidavit essentially states that there was no excessive force used against Plaintiff, and that Plaintiff was uncooperative. Docket No. 621. Defendant Lundy states that he was not in the unit Plaintiff was assigned to on September 26, 2012, and he was not "involved" with Plaintiff on that day. Docket No. 624. Defendant Short states that he let Plaintiff out of the shower stall he was in on September 26, 2012, but that Plaintiff refused to return to his cell. Docket No. 619. Defendant Short called the Yard Sergeant to request assistance and other officers came to the unit to assist

---

[3]Captain Bailey was sued as a Defendant in this action, but he was dismissed following a frivolity review. Docket No. 7.

with Plaintiff. Defendant Short left to tend to other inmates he had to secure in Unit 1, but he states that he did not observe any officer subject Plaintiff to the excessive use of force. Additionally, he states that he did not "intervene, because there was no incident for which [he] had a duty to intervene." *Id.*

The State Defendants, however, apparently wish to simply overlook the allegations of the Verified Amended Complaint. Plaintiff's version of the events is very different from the version provided by Defendants. There is plainly a genuine issue as to material fact. Plaintiff claims that Defendants Tressler and Davis were members of the CERT Team. Docket No. 460, p. 2. He avers that, while he was on the floor of his cell, Defendants Tressler and Davis struck him in the back and head area. *Id.*, p. 3. He claims that he did not resist or fight back. *Id.*

Therefore, there are genuine issues as to material facts concerning the September 26, 2012 incident, and Defendants Tressler, Davis, and Lundy are not entitled to a judgment as a matter of law with regard to these claims.

In a footnote in their Motion, State Defendants also argue that there is "absolutely no evidence that Plaintiff was assaulted, and, therefore, Defendants Gregg and Short had no reason to intervene." Docket No. 617, p. 23 n.2. They argue that Defendant Short has provided an Affidavit, which "plainly contradicts the plaintiff's allegations." *Id.*

There is, however, clear evidence that Plaintiff was assaulted. Plaintiff has stated under oath that he was maliciously and sadistically attacked. This creates a genuine issue as to material fact, and if the fact-finder believes Plaintiff's version of the incident, Defendants Gregg and Short could be liable for their failure to intervene. Therefore, Defendants Gregg and Short are not entitled to a judgment as a matter of law.

State Defendants further argue that Plaintiff was not denied medical treatment after the September 26, 2012 incident. Docket No. 617, p. 25. Defendants cite portions of Plaintiff's medical records to show that on September 26, 2012, at 1:35 p.m., a nurse was called to assess Mr. Shabazz. No apparent injuries were noted, and his vital signs were normal. No bruising or abrasions were noted. *Id.*

According to the State Defendants, Plaintiff was seen "by medical" on September 27, 2012, complaining of pain to his right shoulder and left thumb. *Id.*, p. 26. He claimed that his arm/shoulder was bruised by security "yesterday." Plaintiff's medical chart for that date indicates some "slight bruising on inner forearm." *Id.* Additionally, a slight mark was noted on Plaintiff's wrist, which Plaintiff stated was caused because the handcuffs were too tight. On September 28, he was again examined "by medical." *Id.* It was noted that there was a "healing scrape" and a "bruise to right upper arm." *Id.*

The State Defendants further note that Plaintiff presented at the clinic complaining of pain to his right shoulder, elbow and hand on October 1, 2012. *Id.* When Nurse Angela Combs questioned him about the fact that he was carrying his paperwork with his right arm and using his right hand, arm and elbow with no problem, Plaintiff became belligerent and left the clinic. *Id.* On October 9, 2012, Defendant Wanda Chafin requested x-rays of Plaintiff's arm, but Plaintiff was a "no-show" for x-rays on October 24, November 14, and December 12. He was also a no-show for sick call on December 26, 2012. *Id.*

Plaintiff's Verified Amended Complaint once again tells a different story. After the assault occurred, and after Plaintiff was taken to Unit 4, two nurses came and took his temperature and pulse rate. Docket No. 323, p. 32. He states, "No physical examination was

done at all to ascertain what injuries if any, the plaintiff sustained as a result of the malicious and sadistic assault the plaintiff suffered through." Later that night and the following day, Plaintiff showed Nurses Shumate and Cornet the injuries he sustained. *Id.* He also showed a nurse the cut in his head, which was a result of having his head rammed into a metal doorframe. *Id.* Plaintiff went to sick call on September 28, and showed Nurse Jordan his injuries.[4] He states, "No physical examination was done on the plaintiff." As discussed above, on October 1, 2012, he went to sick call and spoke with Nurse Combs, who said she would not treat him because he was scheduled to be seen on chronic care sometime during the month. *Id.*, p. 33. He states, "Plaintiff was given absolutely no medical attention whatsoever." *Id.* He states that he complained of being in pain with numbness in his right hand, which he still suffers from. *Id.*

In short, there is a genuine issue as to material fact concerning whether Plaintiff received appropriate medical care for his injuries. Therefore, summary judgment is not appropriate with regard to this issue.

State Defendants next argue that Plaintiff has failed to state a claim against Defendants Ruby Anderson, Connie Church, Jerry Gentry, Rebecca Gouge, and Paige Reburn for retaliation under the First Amendment.[5] Docket No. 617, p. 28.

The Sixth Circuit, in an en banc decision, has stated:

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary

---

[4]Nurses Shumate, Cornet, and Jordan were sued as Defendants in this action, but they were dismissed following a frivolity review. Docket No. 7.

[5]Defendants also state that Defendant Paige Reburn is deceased. Docket No. 617, p. 28 n.3.

firmness from continuing to engage in that conduct; and (3) there
is a causal connection between elements one and two – that is, the
adverse action was motivated at least in part by the plaintiff's
protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

There is no argument that a prisoner's involvement in a lawsuit or in utilizing a prison

grievance system qualifies as protected conduct. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 355

(1996); *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002). Defendants essentially concede this

point. Docket No. 617, p. 33.

In addressing the second requirement, the Sixth Circuit has stated:

Whether a retaliatory action is sufficiently severe to deter a person
of ordinary firmness from exercising his or her rights is a question
of fact.

. . .

Our discussion of the "adverse action" requirement in *Thaddeus-X*
makes it clear that, in most cases, the question of whether an
alleged retaliatory action poses a sufficient deterrent threat to be
actionable will not be amenable to resolution as a matter of law:

We emphasize that while certain threats or deprivations are
so de minimus that they do not rise to the level of being
constitutional violations, this threshold is intended to weed
out *only inconsequential actions*, and is not a means
whereby solely egregious retaliatory acts are allowed to
proceed past summary judgment.

. . .

Thus, unless the claimed retaliatory action is truly
"inconsequential," the plaintiff's claim should go to the jury.

308 F.3d at 603, *citing* 175 F.3d at 398 (emphasis added by *Johnson* court).

In his response to the instant Motion, Plaintiff argues that Defendants engaged in three

different sets of adverse actions: (1) Defendant Taylor[6] retaliated against him for filing

grievances and later filing this lawsuit by alternatively acknowledging then refusing to recognize

Plaintiff's status as a legal helper and instructing Defendants Gouge and Reburn to issue

disciplinary infractions if they saw Plaintiff assisting another prisoner; (2) Defendant Taylor –

through her subordinates Defendants Anderson, Gouge, Reburn, and Gentry – also took adverse

actions against Plaintiff to impede and inhibit his ability to pursue this lawsuit be refusing to

make copies, rationing Plaintiff's access to legal supplies in a manner inconsistent with – if not

flatly in defiance of – TDOC policy, and requiring Plaintiff to submit all of his confidential, legal

materials to Defendant Taylor or Defendant Gentry for "approval" before sending them; and (3)

Defendants Taylor, Church and particularly Defendant Gentry demanded that Plaintiff have not

only his legal copies but also his legal mail inspected.  Docket No. 649, p. 10-11.

      Plaintiff's Amended Verified Complaint discusses one of the retaliatory instances as

follows:

> On June 4, 2013 the plaintiff attempted to get legal copies made.
> The library CCO, Ruby Anderson, stated that she could not make
> any legal copies without warden Taylor's prior approval . . . .  All
> of the library CCOs, Ruby Anderson, Rebecca Gouge and Paige
> Reburn, have refused to make legal copies unless plaintiff agrees
> to send his confidential legal material to Sharon Taylor or Jerry
> Gentry for "inspection" prior to copying.  Warden Taylor has also
> instructed her subordinates, Ruby Anderson, Rebecca Gouge and
> Paige Reburn to disregard TDOC policy when it comes to issuing
> out legal supplies.

Docket No. 323, p. 44-45.  Plaintiff further avers that TDOC policy provides that envelopes are

to be issued as needed.  He states, however, "library CCOs Ruby Anderson, Rebecca Gouge and

_____

[6]Sharon Taylor has been sued as a Defendant in this action, but she is not a party to the
instant Motion.

Paige Reburn would only allow the plaintiff three envelopes a day, even though they all knew that the plaintiff had almost thirty defendants in his case." *Id.*, p. 45.

Plaintiff's Verified Amended Complaint further states that Defendant Gentry told him "he would have to review plaintiff's outgoing legal mail addressed to any of the defendants at NECX," and that "no legal copies would be made for the plaintiff, without him first approving and reviewing the legal work and mail." Docket No. 323, p. 47-48.

State Defendants attempt to explain and re-characterize Plaintiff's arguments, and they point to their own Affidavits. Defendants' Affidavits, however, merely show that there are numerous genuine issues as to material fact, which make summary judgment inappropriate with regard to Plaintiff's claims of retaliation.

Finally, State Defendants argue that, to the extent they are sued in their official capacities for money damages, they are not persons under § 1983, and the Eleventh Amendment bars all claims for money damages.

Plaintiff has not specifically responded to this argument.

The State Defendants are correct that, to the extent they are sued in their official capacities, they are not persons under § 1983 and they cannot be liable for money damages. Thus, the instant Motion should be granted with regard to this issue. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

For the foregoing reasons, the undersigned recommends that the State Defendants' Motion for Summary Judgment be GRANTED with regard to the following Defendants, the Court finding that there is no genuine issue as to any material fact, and that they are entitled to a judgment as a matter of law: Wanda Chafin, Sue Clark, Georgia Crowell, Sherry Freeman, Julie

Holtkamp, Derrick Schofield, Jerry Lester, David Sexton, Jim Thrasher, Dan Walker, Rita Edwards, Laura Pierceall, David Jenkins, Harold Angel, Todd Wiggins, Tony Howerton, Connie Church, Jerry Gentry, and Rebecca Gouge.

The instant motion should be DENIED with regard to Defendants Angela Combs, James Lundy, Clifford Tressler, Charles Short, Chris Davis, Misty Gregg, Ruby Anderson, Connie Church, Jerry Gentry and Rebecca Gouge .

The Motion should also be DENIED with regard to Defendants' arguments regarding the statute of limitations, mootness, Eighth Amendment failure to treat Plaintiff's Hepatitis C, excessive force claims arising on September 26, 2012, claims of failure to intervene, and claims of retaliation.

Finally, Defendant Paige Reburn, who is deceased, should be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


    /s/ E. Clifton Knowles            
E. CLIFTON KNOWLES
United States Magistrate Judge